# EXHIBIT A

CASE  09-C-1917                    KANAWHA                                          PAGE   1

TRENTON ENERGY, INC.              vs.  EQT PRODUCTION COMPANY

LINE   DATE      ACTION

1  10/13/09   *CASE INFO SHEET; C W/ATT; SUM & 1 CPY; F FEE; $145; RCT #450052
2  03/31/10    # RE-ISSUED SUM & 2 CPYS
3  04/05/10   SM LET FR SS DTD 3/31/10; SUM W/RET (3/31/10 SS) AS TO EQT
4  04/05/10   SM PRODUCTION COMPANY

A TRUE COPY
TESTE: _Cathy S. Gatson_ CLERK
CIRCUIT COURT KANAWHA COUNTY, W.VA.

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E
Charleston, WV  25305

9171 9237 9000 1000 2395 59



**Natalie E. Tennant**
Secretary of State
Telephone: 304-558-6000
Toll Free: 866-SOS-VOTE
www.wvsos.com

ControlNumber:                293291
Defendant:          EQT Production
                           Company

Cathy Gatson, Circuit Clerk
Kanawha County Courthouse
111 Court Street
Charleston WV  25301-2500

                                              3/31/2010
Civil Action:            09-C-1917

I am enclosing:

| | | |
|---|---|---|
| _____ summons | _____ affidavit | _1_ summons and complaint |
| _____ notice | _____ answer | _____ summons returned from post office |
| _____ order | _____ cross-claim | _____ summons and amended complaint |
| _____ petition | _____ counterclaim | _____ 3rd party summons and complaint |
| _____ motion | _____ request | _____ no return from post office |
| _____ suggestions | _____ certified return receipt | _____ notice of mechanic's lien |
| _____ interrogatories | _____ request for production | _____ suggestee execution |
| _____ original | _____ request for admissions | _____ Other |
| _____ subpeona duces tecum | | |

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact.  According to law, I
have accepted service of process in the name and on behalf of your corporation.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept
service of process in your name and on behalf as your attorney-in-fact.   Please address any questions about
this document directly to the court or the plaintiff's attorney, shown in the enclosed paper.  Please do not call the
Secretary of State's office.*

*Sincerely,*

Natalie E. Tennant
Secretary of State

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

## SUMMONS

FILED

TRENTON ENERGY, LLC,

        Plaintiff,

2010 APR -5  PM 1: 45

v.

        Civil Action No. 09-C-1917
        Honorable Jennifer Bailey Walker, Judge

EQT PRODUCTION COMPANY,

        Defendant.

To the above-named Defendant:  **EQT PRODUCTION COMPANY**
**c/o CT CORPORATION SYSTEM**
**P.O. Box 951**
**Charleston, WV 25323**

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon Plaintiff's attorneys: **Michael W. Carey, S. Benjamin Bryant and the law firm of Carey, Scott, Douglas & Kessler, PLLC,** whose address is: **901 Chase Tower, 707 Virginia Street, East, P.O. Box 913, Charleston, West Virginia 25323**, an answer, including any related counterclaim you may have, to the Complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you. You are required to serve your answer within thirty (30) days after service of this Summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above-styled civil action.

Dated: 3/31/10

Cathy S. Gatson

Clerk of Court

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

## SUMMONS

TRENTON ENERGY, LLC,

        Plaintiff,

v.                                  Civil Action No. 09-C-1917
                                  Honorable Jennifer Bailey Walker, Judge

EQT PRODUCTION COMPANY,

        Defendant.

To the above-named Defendant: **EQT PRODUCTION COMPANY**
                                         **c/o CT CORPORATION SYSTEM**
                                         **P.O. Box 951**
                                         **Charleston, WV 25323**

        IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon Plaintiff's attorneys: **Michael W. Carey, S. Benjamin Bryant and the law firm of Carey, Scott, Douglas & Kessler, PLLC,** whose address is: **901 Chase Tower, 707 Virginia Street, East, P.O. Box 913, Charleston, West Virginia 25323**, an answer, including any related counterclaim you may have, to the Complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you. You are required to serve your answer within thirty (30) days after service of this Summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above-styled civil action.

Dated: 3/31/10

$5

                                    Cathy S. Gatson
                                      Clerk of Court
                                      by
                                      Re-Issued c/som copy

# CIVIL CASE INFORMATION STATEMENT
# CIVIL CASES

In the Circuit Court, Kanawha County, West Virginia

---

I.     CASE STYLE:

Plaintiff(s):                                    Case # *09-C-1917*

                                                 Judge *Bailey*

**TRENTON ENERGY, LLC**

vs.

Defendant(s):                          Days to

**EQT PRODUCTION COMPANY**             Answer        Type of Service

**625 Liberty Avenue**                   20           Secretary of State
**Street**
**Pittsburgh PA 15222**                _____      _____
**City, State, Zip**

Original and ___3___ copies of complaint furnished herewith.

PYMT Type **K**
Rcpt # **450052**        $145 ✓ $135___
Iss. Sum.+___cc      ✓No Sum. Iss
__Ret. to Atty.      __$20cm X __
__Mailed CM/RM       __$5 clk X __
__Mailed to sos w/ck#_____
__Sent to       w/ck#

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

TRENTON ENERGY, LLC

       Plaintiff,

v.                              Civil Action No. *09-C-1917*

                                                    *Bailey*

EQT PRODUCTION COMPANY

       Defendant.

## COMPLAINT

    Now comes the plaintiff, Trenton Energy, LLC, and for its complaint against the defendant EQT Production Company, states as follows:

    1.    The plaintiff, Trenton Energy, LLC (hereinafter "Trenton"), is a West Virginia limited liability company that has its principal office in Ellenboro, West Virginia.

    2.    The defendant, EQT Production Company, sometimes doing business as Equitable Production Company (hereinafter "EQT"), is a Pennsylvania corporation that has its corporate headquarters in Pittsburgh, Pennsylvania. EQT is licensed to do business in the State of West Virginia, transacts business throughout West Virginia, and operates in West Virginia from a principal location in Charleston, Kanawha County, West Virginia, as registered and appearing in the records of the West Virginia Secretary of State's Office.

    3.    The defendant EQT is the largest natural gas production and exploration company operating in the Appalachian Basin, holds extensive mineral reserves in West Virginia, and owns and operates wells, leases, leasehold estates, permitted sites,  pipelines and other facilities for the drilling, production, operation, marketing,  and distribution of natural gas in this

state.

4.     The plaintiff Trenton performs construction and other work related to the oil and natural gas industry.

5.     In the Fall of 2006  EQT contacted Trenton to provide services and perform work for EQT upon its various leaseholds located in the State of West Virginia.

6.     At the outset of the business relationship between EQT and  Trenton, defendant EQT represented to plaintiff Trenton that as long as plaintiff Trenton could and would provide sufficient equipment and manpower to adequately meet and perform  EQT's work demands, then Trenton could  rely and depend upon doing work for EQT.

7.     In order to perform and complete the work that EQT was soliciting from Trenton, it was necessary that Trenton obtain additional equipment, machinery and vehicles, and that Trenton hire additional qualified workers; all of which was necessary to meet EQT's needs.

8.     At the time that  EQT solicited and represented to Trenton the amount of work EQT would be requiring Trenton to perform, EQT knew that Trenton would have to incur substantial expenditures to secure additional equipment, machinery, and manpower to meet EQT's needs and achieve its expectations.

9.     In  reliance upon defendant EQT's representations, plaintiff Trenton agreed to provide and did provide work and services to meet EQT's needs, expectations, and demands.

10.     In reliance upon EQT's representations, and pursuant to the understandings and agreements then existing between EQT and Trenton, Trenton expended significant sums on equipment, machinery, vehicles, and hired additional qualified workers, all as necessary to meet defendant EQT's needs, expectations, and demands.

11.     Plaintiff Trenton began work for defendant EQT on October 31, 2006.

12.     As EQT's demands and expectations of Trenton's equipment and manpower increased, so did EQT's monopolization of Trenton's resources, and plaintiff Trenton had fewer resources to devote to other customers and was forced to turn away other jobs.

13.     From October, 2006 until October, 2008, Trenton satisfactorily performed and completed all work assigned to it by EQT pursuant to the understandings, representations, and agreements between Trenton and EQT,  and fulfilled all of the obligations and duties EQT placed upon Trenton pursuant to the understandings, representations, and agreements between Trenton and EQT.

14.     At no point during the course of plaintiff Trenton's work for defendant EQT did defendant EQT express any dissatisfaction with the quality of plaintiff Trenton's performance or advise Trenton of the inadequacy of its personnel or equipment.

15.     In the Summer of 2008 during a conference at a job site, a supervisory employee of defendant EQT requested of Gerald Hall, the chief executive of Trenton, that the EQT employee be provided "the keys to a camp" in or near the area in which EQT had its operations and which Trenton was working.

16.     Mr. Hall informed the EQT supervisory employee that Trenton did not own any such property in the  area and would not provide him a camp.

17.     Thereafter, on a second occasion while inspecting a job site, the EQT supervisory employee again demanded that Trenton provide him a camp, further stating that Trenton was "going to be making enough money" from EQT and so Trenton "could afford" to provide a camp to the EQT supervisor.

18.     Once  again, Mr. Hall refused the improper demand for a camp.

19.     Thereafter, at approximately 8:14 a.m. on October 14, 2008, the EQT supervisory

employee contacted Mr. Hall by telephone and informed him that EQT was terminating its relationship with Trenton, that Trenton would receive no more work from EQT, and further ordered that Trenton was no longer allowed to be on any of EQT's sites or facilities.

20.     Mr. Hall and Trenton attempted to learn from EQT the reason EQT terminated Trenton's services, and discussed the matter with various EQT officials in numerous conversations since October, 2008, particularly by telephone on April 19, 2009 and June 5, 2009, and in meetings on April 22, 2009, May 14, 2009, and June 10, 2009.

21.     On or about June 5, 2009, an EQT official advised Trenton that there were "issues" related to Trenton's "rates" and the "service quality" of work performed, although neither he nor any other EQT official or manager could identify any specific failures of Trenton to fully and satisfactorily perform its obligations pursuant to the understandings, representations, and agreements between EQT and Trenton.

22.     On or about June 10, 2009, the same EQT official advised Trenton that EQT had conducted an internal investigation and did not have any "issue" or problem with Trenton's rates, prices, quality of work or any other matter.

23.     EQT management then assured Tenton that EQT would resume assigning work to Trenton.

24.     Contrary to the aforesaid inducements, promises and representations of EQT officials and managers, defendant EQT has not restored Trenton to the work that EQT agreed to provide, has not resumed assigning work to Trenton, and has not provided any explanation or reason for EQT's actions toward Trenton.

### COUNT I

25.     Plaintiff Trenton re-alleges paragraphs 1-24 above as if fully pled herein.

26.     Defendant EQT entered into understandings and agreements with plaintiff Trenton, and represented to Trenton, that EQT would assign work to Trenton as needed by EQT, for so long as Trenton supplied the necessary equipment and qualified workers, and satisfactorily performed its work at the agreed pricing.

27.     At all times material hereto, plaintiff Trenton fully performed its obligations and duties owed to EQT pursuant to the understandings, representations, and agreements between EQT and Trenton.

28.     Despite knowing and admitting that Trenton fully and satisfactorily performed its work in accord with the understandings, representations, and agreements between EQT and Trenton, defendant EQT abruptly and unjustifiably terminated Trenton.

29.     Despite representing and pledging to Trenton that it would resume assigning work to Trenton as aforesaid, EQT has wilfully and intentionally refused and failed to do so.

30.     Through the conduct set forth above, defendant EQT willfully and intentionally breached its understandings and agreements with Trenton.

31.     Under the law of the State of West Virginia, there is a covenant of good faith and fair dealing in every contract, implied therein by operation of the law.

32.     Defendant EQT has breached the covenant of good faith and fair dealing by terminating Trenton's work, by ratifying the termination of Trenton's work, by breaching its understandings and agreements with Trenton based on the attempt by an EQT supervisory employee to solicit a camp from plaintiff Trenton, by refusing to honestly and fairly deal with Trenton, by refusing to provide Trenton with truthful information, and by making it impossible for Trenton to continue to successfully perform Trenton's obligations under its understandings, representations, and agreements with EQT.

33.    The wilful refusal and failure by EQT to abide by its understandings, representations, and agreements has harmed Trenton's creditworthiness, standing and reputation among vendors and subcontractors, created a financial hardship on Trenton, and otherwise caused Trenton to suffer significant and substantial damages and losses.

34.    As a direct result of the above-described conduct of EQT, Trenton has suffered significant and substantial financial losses.

<strong>COUNT II</strong>

35.    Plaintiff Trenton re-alleges paragraphs 1-34 above as if fully pled herein.

36.    Defendant EQT represented to plaintiff Trenton that it would assign to plaintiff Trenton work for so long as plaintiff Trenton provided sufficient equipment and manpower to meet defendant's needs and expectations, and performed its work in a satisfactory manner.

37.    Defendant EQT expected Trenton to meet is demands in a manner and at a level EQT represented to Trenton, and EQT knew and reasonably should have expected that plaintiff Trenton, in reliance upon EQT's representations, would be induced and required to purchase equipment, hire additional qualified workers, incur substantial expenses, and make business arrangements so as to perform and complete the work as required by EQT.

38.    Plaintiff Trenton, without fault of its own and acting in reasonable reliance on defendant EQT's representations, did in fact purchase equipment, hire additional qualified workers, incur substantial expenses and arrange its business affairs so that it could perform the work required by EQT.

39.    As a direct result of the aforesaid conduct of defendant EQT, plaintiff Trenton has suffered significant and substantial financial losses.

WHEREFORE, the plaintiff, Trenton Energy, LLC, demands judgment against the

defendant, EQT Production Company, for contractual and reliance damages in amounts to be determined, pre-judgment and post-judgment interest thereon, plaintiff's reasonable attorney fees and costs expended herein, and such other and further relief as the Court deems just.

PLAINTIFF DEMANDS A TRIAL BY JURY.

Respectfully submitted,

TRENTON ENERGY, LLC,

By Counsel

Michael W. Carey, WVSB No. 635
S. Benjamin Bryant, WV State Bar #520
David R. Pogue, WVSB No. 10806
Carey, Scott, Douglas & Kessler, PLLC
901 Chase Tower
707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
(304) 345-1234